Good morning, Your Honors. May it please the Court, my name is Taylor Williams. I'm with the Supreme Court of Pennsylvania Administrative Office of Pennsylvania Courts, and I represent Appellant President Judge Richard Saxton. With the permission of the Court, I will reserve two minutes for rebuttal. The lower court in this case denied President Judge Saxton's motion to dismiss raising qualified immunity as to both of plaintiff's claims, and those were claims of denial of due process and First Amendment retaliation. Plaintiff's amended complaint actually states only three operative facts, and that's on A15 of the appendix, paragraphs 7 through 8. The facts are these, that plaintiff's supervisors indicated that... which plaintiff's claim of public concern was predicated of denial of First Amendment protection. The lower court did not consider that letter. However, it's our contention that the court should have, especially with the trend towards pleading qualified immunity in a more specific way. Now, I understand that Thomas v. Independence Foundation retains notice pleading, but there's some very, very strong language in there that tells us that when qualified immunity is raised, the district court needs to do whatever it can to get the qualified immunity disposed of... It was referred to, Your Honor, and the complaint is predicated on it. The complaint said only that her supervisors had indicated that the clients of the adult probation office were scum, and no government money should be wasted on rehabilitation. And as the result, the adult probation office was being run in an ineffective manner. Now, that was the allegation in the complaint, but the cases in the First Amendment area teach us that the content of the speech is a matter of law, and it's to be reviewed at the earliest juncture. So, as a matter of law, I presented the actual speech, and I said, please take this, Judge, and if necessary, convert it to a motion for summary judgment. The court did not do that. It also could have come in as an integral part of the pleading process. As you point out, Judge Padova, the letter was referenced in the complaint, and therefore, it's the predicate. This case, this court has, in a number of cases, indicated that the lower court should, in that case, consider the document on which the complaint is based. But here, the plaintiff simply took two sentences from that letter. I felt that it was important that the lower court see the parameters of that letter and look at it, and fairly looked at, you see that no matter of public concern is actually raised. Therefore, President Judge Saxton was entitled to qualified immunity on the First Amendment retaliation claim. Looking at the letter, you see that she complains about her supervisors, and I dare say that the letter has something of an insolent tone, a bit of a disrespectful tone. She starts out by saying, the reason that I am writing to you now is that I can no longer work under the stressful conditions which I must endure since Mrs. Forsman has become my supervisor. She then says, I have seen several supervisors come and go. During the times when there was no supervisor, I ran the everyday operation. Well, when we read the letter, it seems to me that the one thing which might help you the most is what you began with, and that is her own statement about why she's writing the letter. The reason I'm writing the letter is because she can't work under Mrs. Forsman. But there is some information in there that could, I think you would agree, maybe you wouldn't, that may be material that would be pertinent, would be a matter of public interest under Connick. How the probation office handles its probationers would clearly be a matter that would be relevant to public interest. I think if you look at the cases that are coming down more recently, you see where there's this sort of mixed information. She mentions the term harassment. She says, I've been harassed because it's so stressful. These supervisors aren't running the probation office correctly. But the recent cases are coming down and saying simply because an employee feels that the office isn't being run correctly doesn't mean that it's a matter of public concern. Otherwise, this court would be even busier than it now is. Well, that's true, but I'm talking specifically about how people under the court's supervision on probation are treated by the probation office. That would be a matter of public concern. I don't believe it would, Your Honor. I think it shows, as she says later in her letter, a clear difference in philosophy between the accountability supervisors who say, you've got to go out, and she says it in the letter, they're making me go and get restitution from these probationers. And I just want them to go to counseling. It's a difference in philosophy with the accountability. She talks about how the probationers are treated like scum by the office. That is the kind of language I'm referring to, not about the restitutionary problems and the difference of philosophy in the office. She doesn't actually, as I read the letter, say that they're treated like scum. The probation office supervisor said they are scum. Now, I'm not sure that that means they're being treated like scum. Maybe worse. But these are probationary offenders who are being called to restitution and to certain requirements required by the probation office. So. Language and rude mannerisms toward people is very unprofessional. Unprofessional. Not a matter of public concern. Unprofessional, I don't think, is a matter of public concern. One employee's perception of her supervisors, she's obviously disgruntled. She used to run the office. And she's not able to adapt to the new mode under these supervisors. I think it's really as clear as that in the four corners of that document. And she's a little sassy, if I may say so. She says, apparently that is the kind of probation officer you and Mr. Rosamilla admire. So, she's close to insubordinate in saying that she cannot work with these supervisors. And the letter ends with an ultimatum, basically. She says, I'm not sure I can return to work there as long as Mr. Rosamilla and Mrs. Foreman continue to work there. In other words, fire those supervisors and keep me. Which is something that President Judge Saxton apparently was not willing to do. You don't have a background in theater by any chance, do you? I do, Your Honor. Why do you ask? The way you read that letter. I mean, I didn't read that letter that way. But I don't have a background in theater. I don't have the same flair for the dramatic. I don't have the same talent. And this particular President Judge, who had put these supervisors only recently in place, as the letter shows, was unhappy that somebody was not willing to adapt to the new supervisory structure. In order to reverse the lower court and grant your motion to dismiss, and we're now talking about the First Amendment retaliation claim,  what is it that we must determine in order to grant your motion to dismiss? In other words, apply qualified immunity in favor of the judge. Must the letter clearly indicate that its subject was public concern? Or must the letter clearly indicate that its subject was not public concern? Or am I saying the same thing? Perhaps we're all saying the same thing. The matter of public concern doesn't have to be, the letter doesn't have to wholly be on a matter of public concern. And Judge McKee, as Judge McKee mentions, well, isn't the running of a public office a matter of public concern? Well, of course it touches on a matter of public concern. But it's not the kind of public concern that indicates that she's trying to draw Judge Saxton's attention to a greater problem. Her complaints are all, the supervisor lied to me, the supervisor suspended me, the supervisor doesn't talk the way I would prefer these probation officers to talk. The probation, this new supervisor took my office because it's larger and she wasn't supposed to do that. All of these allegations in the letter very clearly speak to Ms. Miller's own personal grievance. It's like the Connick case, I think, more closely aligned with those provisions where in Connick, the disgruntled district attorney who didn't like her new assignment sent out a questionnaire to all of her colleagues and said, you know, isn't the morale low? Well, I think that's what this letter basically says. The morale is low. I don't have any, I'm your employee, Judge, and I don't have any confidence in the supervisors you've just put in place for me. I'm not going to adapt to them. I'm not going to continue to work there. Well, maybe we need more than the letter. Maybe there are sufficient, maybe the circumstances are sufficient to call for 12E treatment. That's. Give the other side an opportunity to introduce. To come forward. And under the Supreme Court's decision in Twombly, that would be a logical extension of my argument. And I did, under Thomas v. Independence, say to the trial judge, please, alternatively, if you don't think that this is enough, require the plaintiff to plead more specifically what area of public concern she is discussing. Because here is the letter. And this letter looks to me as if it's not protected activity. As Judge Roth has pointed out in a case recently, the content is a matter of law, and the content has primacy. So looking at the four corners of the. But I will tell you, Judge, just from my knowledge of this case, what plaintiff alleged happened. Judge Saxton read the letter and responded immediately saying, well, if that's the position you're going to take, I can't work with you. You'll have to be terminated if you can't work with these supervisors. So her letter is very problematic for her, because while she talks generally about harassment and this and that, she doesn't relate back to any protected activity anywhere. She doesn't say there's stress and harassment because of my race. There's stress and harassment because of my sex or my disability. There's no allegation that draws back to protected activity. And as you know, the Supreme Court and this court has often held that in cases like this, the plaintiff may have another remedy. She may have a whistleblower claim, for example, but she doesn't have a First Amendment right here because there's not protected speech. She went above her supervisor's head and said to the President Judge, I can't work with these supervisors. Look at them. I don't like them. With that in mind... You're incredibly talented, the way you do that. I can just see Ms. Miller there, in tears and outrage, writing this letter as you do that. Well, I think she was, and she had a very clear idea in her mind as to how the office should be run. As she points out, before the supervisors came in, when there was a lapse in supervisory power there, I took over and I ran the place like a team, and I liked that. And people met in my office and we talked about counseling. That's how she would prefer to work, and there may be some merit to that. However, Judge Saxton preferred that the supervisors who wanted accountability from the probationary offenders be required to be accountable. And Ms. Miller doesn't feel that that's the important influence in the office, and so she's a disgruntled employee. Thank you, Ms. Williams. Thank you very much. I think you saved a couple of minutes. Thank you. There is a due process argument, which I think is really very clear. Well, on your rebuttal, hopefully you'll get some time. Thank you, Your Honor. I will. Good morning. My name is Joseph Green, and I represent the county here. My guess is you won't be as eloquent as Ms. Williams. No, and I reserved only a short period of time because I'm an appellee who is not really contesting anything that the appellant said. Just to give you an idea of what our position is, essentially that in agreement with appellant's counsel, but that the employment relationship characteristic at issue here, which would be the right to fire or discharge discipline. Pull the microphone up a little bit. I'm sorry. I'm afraid we're going to lose you on the tape. That that employment characteristic really rests, either rests with the, well does rest with the Court of Common Pleas through Judge Saxon, that the county really did not have the authority to take this action. The judge isn't our agent, of course. And finally, with respect to the due process argument, I think the Pennsylvania Supreme Court has very clearly addressed that issue in the Ellen Bogan case. Even if there is a collective bargaining agreement with Just Cause, in this circumstance with a court-related employee, that part of a contractual cause of action, if you will, would not be applicable. Seems like you should be sitting with Ms. Williams rather than Mr. Orso. Mr. Orso. Good morning, members of the Court. My name is Joe Orso. I represent Rita Miller. With friends like Mr. Green, Mr. Orso, you really don't need to have opposing counsel sitting over there, do you? Yes, I thought Mr. Green and I would have the same position, but he informed me this morning he was opposed. Okay. But why isn't Ms. Williams right? We didn't get to her due process claim, but we do touch on something here, which is I suggested to her could be, and I say could be, a matter of public interest, the fact that probationers are being either treated like scum or the person in charge of the probation office thinks they're scum. And I would totally concede, and I've argued this point many times, that the motivation with which an employee, a public employee acts, is not necessarily determinative of whether or not the subsequent complaint is a matter of public interest, because obviously there's some kind of discreditment there or the matter would never come to the fore. So the fact that it's a personal grudge doesn't negate or answer the kind of inquiry. But when you've got a letter like this that goes on and on and on about personal grievances and personal beefs, and she says right in the letter, the reason I'm writing to you is because I just can't take this stuff anymore. I can't work like this anymore. And then somewhere buried in the body she does work in the reference about the attitude that they're like scum. Why isn't that exactly like the Connick questionnaire, that any kind of public interest is so tangential that it's lost and it's really not a First Amendment protected item anymore? Your Honor, I disagree. In Connick, the questionnaire was purely a matter of private concern. And to follow up on Judge Padova's previous question to Attorney Williams, we have a letter, granted there are some issues of private concern in the letter, but there are clearly issues of public concern in the letter. And as Judge Jones reviewed on this, and we're at a 12B6 motion. We've had no discovery in this case, but we're at a 12B6 motion. And the public concerns are implicated in the letter as referenced in the complaint. Those public concerns were specifically referenced in the complaint. The remaining part of the letter that may or may not deal with purely private concerns were not referenced in the complaint. But why shouldn't the court have considered the entire letter rather than just the complaint or pension guarantee? It says that's exactly what the court should have done, especially when you've got qualified immunity at stake. Because otherwise, you're totally ignoring the whole protection that the doctrine is supposed to. Well, I'm refusing that with 12B, but it's the same inquiry. This is a document, or I can read you from a pension guarantee, where we said, we hold that a court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. And by not considering that letter, in and of itself, wouldn't that be an error? Okay. Well, Your Honor, I don't know that Judge – what Judge Jones did, if you look at the footnote in the opinion, is that Ms. Williams didn't just ask him to review the letter. Ms. Williams asked him to convert the 12B6 to a motion for summary judgment. Right, but I'm saying he didn't have to. He didn't have to do that. Why couldn't he just consider the letter, not convert it, relying upon pension guarantee, enroll in a motion to dismiss based upon the complaint and the answer as supplemented by this June 22 letter? Your Honor, he could have done that, but I submit that the result would have been the same, that the 12B6 or whatever the type of motion would have been would have been denied because of the addressing of matters of public concern. But on that issue, Judge, what Judge Jones said was that he could not convert it to a motion for summary judgment because the record was not developed enough for a motion for summary judgment. And in particular, as noted in his opinion, even during the pendency of the 12B6, we were attempting to depose Judge Saxton. Those requests were rejected by counsel and Judge Saxton pending the 12B6. So I think that may have been part of Judge Jones' rationale for failing to convert it to a motion for summary judgment. That's probably why Ms. Williams planned the alternative, then, that the 12E motion be granted. Well, counsel raised that request, Your Honor, and we objected. And Judge Jones found that that was not necessary. And I don't believe to convert it to a 12E is necessary as well. There's sufficient – we're at the pleading stage. I know we're supposed to – this Court and the Supreme Court has held that we're supposed to address these issues as soon as possible. But the problem is it's beginning to place an almost impossible burden on the plaintiff in that – No, it's not at all. She attaches – once she attaches this letter to the complaint, and if there's anything more specific she can allege to show why this is a matter of public concern, or in the complaint to show the authority to allow for something other than an interpretation that she's an employee at will, put it in there because otherwise – again, qualified immunity is at stake here. And to the extent that it means that the person who has the benefit of the qualified immunity is immune from – not from trial but from suit, it seems to me you have to take the kinds of steps that Ms. Williams was asking the Court to take. And in the complaint, the letter is not – the letter is not a letter that addresses purely private concern. And in the complaint, we specifically indicate the matters of public concern. And it's interesting, we're not at a summary judgment, but in her deposition, Ms. Miller was expanded upon quite a bit on the matters of public concern. But in any event, the letter – in this case, adding the letter – it's not like the Herman case. Now, when the – when the – Judge Saxon filed his brief, he listed as a related case the Herman decision. And then prior to my brief being filed, that decision was decided, and I know it's not precedential. Yeah, but I think Herman is very different. You can make your argument, but I think that's a very, very different situation than we have here. Well, in Herman, they actually – in their complaint, they had nothing. They had no allegations at all as to any First Amendment violation. And the Court remanded for an amended complaint. And I think it is – I think in that regard, it is different than this case. Because in that case, there was absolutely no allegations, as I read the decision in the complaint, as to exactly what First Amendment right was violated and how it was implicated. In our complaint, we specifically do have the statements which we believe touch on public concern. And I would like to just briefly address the due process issue, and I know counsel addressed it in her rebuttal. Can I just ask you one question? Certainly. Should Twombly affect our consideration of the sufficiency of a complaint when qualified immunity is involved? Or should it affect our willingness to consider, for instance, the letter which is referred to in the complaint? I believe you have to take the approach that, in this case, that Judge Jones took. Look at the complaint. See if the complaint is sufficient. Judge Jones obviously felt it was. And if it's not sufficient, then Judge Jones issues a 12E ruling, a decision under 12E to file an amended complaint and include the letter. I think that the – I'll just repeat myself. I believe that it's clear that a matter of public concern is implicated on the due process issue. And also, I just want to correct one statement that counsel made. After Judge Saxton received the letter, counsel may have misspoke and said that Judge Saxton indicated, well, if you can't get along with your supervisors, you're fired. That's not what Judge Saxton's letter said. Judge Saxton's letter said, basically, I have no choice but to terminate you effective a week later, January 31, 2006. It didn't say anything at all about because you can't get along with your supervisors. It just simply said, I have no alternative but to terminate you. Obviously, generally, an employee, an at-will employee, does not have any constitutional just cause protection. But in this case, there was a collective bargaining agreement that does provide just cause protection to the plaintiff. And under Pennsylvania law, if the judges delegate to the county commissioners the authority to negotiate the collective bargaining agreement, and that collective bargaining agreement includes just cause protection, then the judges are bound by that. And that was one of the ideas or one of the issues that we were going to examine with Judge Saxton during his deposition, exactly how did he delegate, if anything, to the county commissioners in terms of negotiating the judicial employees and the collective bargaining agreement. Hasn't the Pennsylvania Supreme Court held that the right to collectively bargain does not affect the court's inherent right to, the judges' inherent right to fire or to supervise employees? And to the extent that there is some piece of legislation that would override that right, where is it? Because you haven't cited that. You've cited the right to enter into collective bargaining on wages and conditions of employment, which does not seem to me, and correct me if I'm wrong, if you can point me to something, to override a judge's right, inherent right, to fire and supervise employees. I did cite the decision of the Pennsylvania appellate courts where it says that the judges still must afford due process protection to the employees. That would be the... That was basically the abuse of the judicial order case where the court basically entered an order to resolve a labor dispute. Is that the same case you're thinking of? Yes, Your Honor, that's the case, Lancaster County v. Labor Relations Court. Okay. That is the case. In short, we are at the infant stages of the case, the pleading stage. Judge Jones properly denied the 12B6 motion and properly declined Judge Saxton's request to convert it to a 12E motion and properly declined the request to convert it to summary judgment. Thank you. Thank you. Your Honor, counsel for appellees seems to be focused on the infant stage of the proceeding, but the language in Thomas v. Independence Foundation is very clear. Until the threshold immunity question is resolved, discovery should not be allowed. Thus, unless the plaintiff's allegations state a claim of violation of a clearly established law, a complaint of qualified immunity is entitled to dismissal even before the commencement of discovery. And I think that says it all. This court is respectfully asked to allow consideration of the letter. When that letter comes in, then we are in a condition to, as a matter of law, evaluate whether we have public concern here or not. And it seems very clear, I think, given the opinions and the trend of the opinions, that it is not a matter of public concern when an employee speaks to the president judge of the county complaining about one grievance after another. And Judge McKee, your term, beef, I think is a very good one to describe the overall tone of the letter. And she cannot save that letter simply by saying, well, I'm talking about a public agency and how ineffectively it's run, so therefore it's public concern. She doesn't take it to the public anywhere. She doesn't say, I went to the media with it, and indeed there's nothing to indicate that she did. There's just no indicia of true public concern in the confines of that letter. With all due respect to my opposing counsel, his analysis of the due process claim is just plain wrong. I think, Judge McKee, you indicated very clearly your understanding. And I think the federal courts have a strong understanding of how the county court dichotomy in Pennsylvania works and the separation of powers doctrine and how the county, being the funding agent, feeds into the funding of the court, but that the right of the judge to hire, fire, supervise cannot be infringed on. And there are two reasons for that, and they're good ones. The first, of course, is the separation of powers doctrine. And the second is that the judges take appeals. Pennsylvania judges take appeals from the Labor Relations Board, and they hear labor issues. But the statute, which is cited in one of our briefs, is 16PS1620, and that says very clearly, under statutory law, the county, the bargaining unit, cannot ever, ever infringe on a judge's right to hire, fire, supervise employees. So President Judge Saxon's broad shoulders has the whole case resting on his shoulders. The county was not the employer. We take responsibility. And given the fact that plaintiff's letter, on which her whole complaint is predicated, that letter of private grievance, given that that letter. The letter deals with a public agency. It deals with the operation of a public agency. It's replete with criticism with respect to that operation, the operation of a public agency. Isn't that sufficient? It is not, Your Honor, under the cases. Taken fairly well. What's your best case on that? You said it is not under the cases. Well, Connick v. Myers is certainly one. There have been a lot of recent cases in other circuits. The 11th Circuit, the 4th Circuit have both considered this. And they say, on balance, this, as a matter of law, this does not trigger a matter of public concern, where there is so much, so very much criticism that goes to aye, aye, aye, aye. I wish she had more carefully edited the letter and left in the first. Let's assume that she knocked out the first paragraph. Starts with the second paragraph, the reason I'm writing this letter. Knocks out some of the kind of petty stuff about her supervisors. Includes the business about how probation is, I consider, scum. And she boils it down to two very brief paragraphs. Does that change things? It probably does not, Your Honor. Content is prime. We've talked about that. But there's also form and context. And the form and context, I think, still insulates this from First Amendment protection. Because she went to the president judge. She didn't go to the media. She didn't testify in official proceedings. Connick didn't go to the media either. No. But she circulated her questionnaire very widely among the office. This was not done here. She went to the president judge and said, they think, my supervisors think, the probationary offenders are scum and, therefore, the office is being run ineffectively. And I don't believe that's enough. The form and context of the speech where she just goes to the president judge. Now, with so many, as I say, near insubordinate statements and ending with an ultimatum, I can't work there. I do not believe I can continue to work there unless these people are fired. I'm not going to work with them. That failure to adapt is very clear in the letter. And I think that overwhelms any contention that there is First Amendment protection for this speech. Thank you very much. Thank you, Your Honor.